# IN THE COURT OF APPEALS OF IOWA

_____

No. 25-1486
Filed March 11, 2026

_____

**In the Interest of R.H., Minor Child,**

**D.H., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Marshall County,
The Honorable Paul G. Crawford, Judge.

_____

**AFFIRMED**

_____

Merrill C. Swartz of Swartz Law Firm, Marshalltown,
attorney for appellant father.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney
General, attorneys for appellee State.

Mary Cowdrey of the State Public Defender's Office, Marshalltown,
attorney and guardian ad litem for minor child.

_____

Considered without oral argument
by Ahlers, P.J., and Buller and Sandy, JJ.
Opinion by Buller, J.

**BULLER, Judge.**

A father appeals the termination of his parental rights to a child born in 2024. He claims the State failed to prove the child could not be safely returned to his custody and the court should have granted him six more months to achieve reunification. We affirm.

## BACKGROUND FACTS AND PROCEEDINGS

The day after the child was born, the Iowa Department of Health and Human Services (HHS) received a report that the "parents were unable to meet [the child's] needs and the home was not suitable for a child." After a couple weeks of voluntary services, HHS applied to remove the child from the home, observing the family's apartment was "highly unsanitary," with food and dirt ground into the carpet, and cat feces and urine, dirty dishes, and clutter throughout the home. When removing the child, HHS discovered the parents "had not fed their newborn baby in nearly nine hours," and the child was dehydrated.

HHS requested—and the juvenile court ordered—the parents to clean the home, complete a parenting course, complete substance-abuse and mental-health evaluations, and follow all recommendations from the evaluations. The parents lived in four different places in the ten months between the child's removal and the termination hearing. They were evicted from the original apartment, lived with a friend for a time, and then moved in with the mother's family (whose house was not suitable for a child). Their most recent home was a studio apartment with no crib for the child. It appears almost all efforts at keeping their homes in acceptable condition fell to the mother with little help from the father. The father provided financially—paying for the apartment and limited extras—through social security disability payments.

The parents did not consistently attend parenting classes, which ended due to their failure to participate. The father did not complete a substance-abuse evaluation, saying he didn't need it despite using marijuana regularly to treat arthritis pain without a medical marijuana card. Although he claimed to have stopped smoking marijuana at one point, the father continued to purchase marijuana-derivative products from stores and tested positive for a marijuana metabolite in a June drug test. In early 2025, he told workers he had switched to vaping mushrooms. The father later admitted vaping a mushroom cartridge before "almost every single visit [with the child] . . . and that helps me to be able to function a little bit better," to "loosen it up to where I can move around a lot better." The father also did not pursue a mental-health evaluation or treatment, saying he did not need therapy.

The father's attendance at visits was inconsistent, missing more than half offered; the mother was the primary caregiver at all visits, with the father only occasionally holding the child when encouraged by the mother. As the family services provider summarized after a February visit, an hour into the visit, "[the father] had not interacted with [the child] and had been playing on his phone the entire time," and when the child cried as the mother prepared a bottle, he "did not attempt to hold her . . . or calm her." At a visit the week before the termination trial, the worker described the parents: "Mother demonstrated consistent engagement and affection throughout . . . . Father was largely disengaged, spending most of the visit on his phone . . . ."

A few weeks after the termination trial, the child's guardian ad litem requested the court suspend parental visits because the father had vaped mushrooms immediately before attempting to interact with the child and,

when the case worker attempted to end the visit, the parents attempted to block her in the home.

The court terminated the parents' rights under Iowa Code section 232.116(1)(h) (2025). The father appeals, and we review de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

## DISCUSSION

The father asserts the State failed to prove the ground for termination and that the court should have granted him an additional six months to achieve reunification with the child because "the parents are young and they have learning to do in being parents." We address each claim in turn.

First, the father contests the ground for termination, arguing the State failed to prove the final element—that the child could not safely be returned home. *See* Iowa Code § 232.116(1)(h)(4). In its ruling, the court noted the parents' difficulties maintaining a clean environment even with several moves and many months of time. And the court observed that, on the occasions the apartment was clean, the mother missed appointments and "pulled all nighters or nearly all nighters" in advance of the inspection, but the court did "not see father as picking up the slack." The child is crawling and trying to stand, making a "cluttered and dirty" floor a safety concern. The court also discussed the cleanliness of the home in relation to unresolved mental-health or substance-abuse problems, neither of which the father had even attended an evaluation for.

The father argues that, because "the house was clean when [HHS] inspected the mother and father's home," the reason for the court's involvement no longer exists. This argument ignores testimony from a caseworker that in one instance when the mother forgot HHS was coming,

"the house was not clean," which combined with multiple "all nighters" indicates the apartment rapidly devolves into clutter and filth when not under direct observation by HHS. We are also concerned with the father's statement he used to clean "nonstop" as a teen, but due to problems with friends and his pain, he "just like shut down with it." This suggests the father's mental health is a barrier to maintaining a safe home for the child, particularly given the father's refusal to participate in a mental-health evaluation or treatment. More, his paucity of effort helping the mother maintain the home also indicates he either does not understand the child's needs or does not care about the child's safety and development. *See In re M.M.*, No. 17-1124, 2017 WL 4051009, at *2 (Iowa Ct. App. Sep. 13, 2017) (citing parents' lack of participation and progress and "inability or unwillingness to understand and provide for the child's basic needs for a nurturing, stable and safe home").

In short, the father has not participated in any services or taken any steps to act as a parent or establish a home the child can safely return to. Rather, the efforts made to care for the child, prepare the home, and become a safe parent were all the mother's, with the father rarely taking part. The father has not demonstrated the ability or interest in taking on the duties encompassed in parenting. *See In re J.K.N.*, No. 08-2069, 2009 WL 1677000, at *4 (Iowa Ct. App. June 17, 2009). On this record, the State established by clear and convincing evidence the child could not safely be returned to the father's custody. *See* Iowa Code § 232.116(1)(h)(4).

The father next asserts the juvenile court should have granted a six-month extension in the case. To grant an extension, the court would have had to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for

5

removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b). In doing so, courts look to the parent's past performance. *In re K.K.*, No. 18-0943, 2018 WL 3650376, at *3 (Iowa Ct. App. Aug. 1, 2018). On this question, the juvenile court ruled:

> Father's past performance has been minimal and poor. Court can find no evidence that he has ever made a bottle for [the child], given her a bottle, or changed her diaper. Father is willing to expend more energy rushing to the vape store than putting down his phone and meaningfully interacting with his daughter during a visit. The Court sees no ray of hope that father can make the necessary "improvement" to merit giving him another six months to try.

We similarly see no evidence in this record of the father seeking contact with the child, comforting the child, or doing any parenting work during visits. He has not obtained either the substance-abuse or mental-health evaluation and treatment ordered by the court, and he argued he did not know he was supposed to obtain them despite prior court hearings, court orders, and HHS reports recommending exactly that. We see no basis for determining the father will be able to care for the child in a safe, stable environment in the next six months.

**AFFIRMED.**